IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ADRIENNE M. ZAIGER,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

No. C11-0111

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      A.    *Zaiger's Education and Employment Background* . . . . . . . . . . . . . 5
      B.    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . 5
            1.    *Zaiger's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
            2.    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . 6
      C.    *Zaiger's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.    **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . 14
      B.    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . 16
            1.    *Penick's Opinions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            2.    *Dr. Quinn's Opinions and the ALJ's RFC Assessment* . . . . . 18

VI.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.  **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Adrienne M. Zaiger on October 25, 2011, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Zaiger asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Zaiger requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On June 19, 2009, Zaiger applied for both disability insurance benefits and SSI benefits.[1] In her applications, Zaiger alleged an inability to work since February 13, 2006 due to depression, borderline personality disorder, and back problems.[2] Zaiger's applications were denied on August 18, 2009. On December 14, 2009, her applications were denied on reconsideration. On February 2, 2010, Zaiger requested an administrative hearing before an Administrative Law Judge ("ALJ"). On March 16, 2011, Zaiger appeared via video conference with her attorney before ALJ Jo Ann L. Draper for an administrative hearing. Zaiger and vocational expert Roger F. Marquardt testified at the hearing. In a decision dated April 1, 2011, the ALJ denied Zaiger's claims. The ALJ determined that Zaiger was not disabled and not entitled to disability insurance benefits or

---

[1] Zaiger applied for both disability insurance benefits and SSI benefits in March 2006. Those applications were denied on May 4, 2006. *See* Administrative Record at 70-71. It appears from the record that Zaiger did not seek reconsideration of the denial of those applications.

[2] Curiously, Zaiger's application for SSI benefits provides a disability onset date of October 1, 2000. *See* Administrative Record at 166. In her decision, however, the ALJ states that the disability onset date for both applications is February 13, 2006. *See id*. at 14. Similarly, in their briefs, both parties agree that the disability onset date for both applications is February 13, 2006. *See* Zaiger's Brief (docket number 14) at 1; Commissioner's Brief (docket number 15) at 3. Therefore, because the ALJ and the parties agree on February 13, 2006 as Zaiger's disability onset date for both applications, the Court also will use February 13, 2006 as Zaiger's disability onset date.

SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Zaiger appealed the ALJ's decision. On August 24, 2011, the Appeals Council denied Zaiger's request for review. Consequently, the ALJ's April 1, 2011 decision was adopted as the Commissioner's final decision.

On October 26, 2011, Zaiger filed this action for judicial review. The Commissioner filed an Answer on February 2, 2012. On March 12, 2012, Zaiger filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing work that exists in significant numbers in the national economy. On May 11, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On May 21, 2012, Zaiger filed a reply brief. On February 2, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." Id.

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. Id. (citing Guilliams v. Barnhart, 393 F.3d 798,

801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir.

1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Zaiger's Education and Employment Background

Zaiger was born in 1984. She is a high school graduate. At the time of the administrative hearing, Zaiger testified that she was taking "some" courses at Kirkwood Community College. Specifically, Zaiger's attorney asked Zaiger whether she had ever completed a full semester at Kirkwood. Zaiger replied that she had not been able to complete a full semester because "since I went full-time, I have never actually been able to not drop a class for medical reasons, if not even more than one."[3]

The record contains a detailed earnings report for Zaiger. The report covers the time period of 2000 to 2009. Zaiger had minimal ($310.51) to no earnings from 2000 to 2003. From 2004 to 2007, Zaiger earned between $2008.02 (2004) and $15,455.41 (2005). She has no earnings since 2008.

### B. Administrative Hearing Testimony

#### 1. Zaiger's Testimony

At the administrative hearing, Zaiger's attorney asked Zaiger to describe her main psychological symptoms:

> Q: Okay. What, what are your main psychological symptoms, that you're aware of?
>
> A: I don't take criticism well at all. I have a tendency to be very defensive. . . . [I]t's very hard for me to keep a schedule and get to work. And I get depressed

---

[3] Administrative Record at 40.

> sometimes when I wake up in the morning. I don't
> even want to get out of bed. And there've been times
> in the past where I've actually done that. I've been in
> bed for 14 hours straight before.

(Administrative Record at 43.) Next, Zaiger's attorney asked Zaiger to discuss her difficulties with physical pain. Zaiger described her pain as follows:

> A: Yeah. Today, I'm in a lot of pain, actually. And if I
> take stronger medicine for my pain, I can't function,
> and that really is frustrating, so a lot of times, I just
> deal with pain, instead of, you know, feeling better, but
> I can't function. And you definitely can't take -- go
> into a job when you're taking a narcotic pain killer or
> whatever they give that's really strong. Also, with this,
> I have fibromyalgia, so I'm extremely sensitive. . . .

(Administrative Record at 49.) Lastly, Zaiger's attorney inquired from Zaiger why she needed help from social workers to function on a weekly basis. Zaiger explained that:

> A: I can't focus sometimes on stuff, and if I get
> overwhelmed, I have a tendency to kind of shut down
> and not do anything, and that's really hard. So, I have
> more of a consistent schedule where I have to go places
> or people are coming over there. . . . But, I mean, it's
> really hard when you get overwhelmed, especially when
> you're trying to take college classes. I get
> overwhelmed; and then, I don't -- I go to class, but I
> don't get anything done. And then, I have to drop the
> class, because I'm getting an F. Or, in this last term,
> I have to go do it, I was actually told to drop the class
> by my teacher, and this was a class for my major.

(Administrative Record at 54.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Roger F. Marquardt with a hypothetical for an individual who is:

> exertionally limited to the performance of no more than light
> work activity, lifting and carrying only occasionally up to 20
> pounds; standing and walking limited to no more than six
> hours a day; sitting, no more than six hours a day. This

> individual could only occasionally climb, balance, stoop,
> kneel, crouch, crawl; but could never climb ropes, ladders, or
> scaffolds. This individual could have only occasional exposure
> to pulmonary irritants, such as fumes, odors, dusts, and gasses
> [*sic*]; and this individual should have no more than occasional
> exposure to extremes in temperature, such as heat, and cold,
> and humidity, or wetness.

(Administrative Record at 65.) The vocational expert testified that under such limitations, Zaiger could perform her past work as a cashier. The ALJ asked the vocational expert a second hypothetical by adding an additional limitation to the first hypothetical, in that the individual could only have "brief superficial interaction with public, coworkers, and supervisors." Again, the vocational expert testified that under such limitations, Zaiger could perform her past work as a cashier. Next, the ALJ asked the vocational expert a third hypothetical which was identical to the first hypothetical, except that the individual would need three extra unscheduled breaks of 10 to 15 minutes in a regular eight-hour workday, and would miss work four or more times per month due to her disability. The vocational expert testified that under such limitations, Zaiger could not find competitive work. Lastly, the ALJ offered the vocational expert a fourth hypothetical where the individual was limited to:

> sedentary work, lifting and carrying no more than 10 pounds
> occasionally, 5 pounds frequently; standing and walking
> limited to two hours a day; sitting, six to eight hours a day;
> and again, only occasional ability to climb, balance, stoop,
> crouch, crawl, kneel; occasional exposure to extremes in
> temperature/humidity; occasional exposure to pulmonary
> irritants; never climbing ropes, ladders, or scaffolds; and
> only . . . brief superficial, interaction with public, coworkers,
> and supervisors.

(Administrative Record at 67.) The vocational expert testified that under such limitations, Zaiger could perform the following work: (1) telephone solicitor (5,900 positions in Iowa and 345,000 positions in the nation), (2) diet clerk (330 positions in Iowa and 12,000 positions in the nation), and (3) referral clerk (370 positions in Iowa and 20,000 positions in the nation). The vocational expert further testified that if the hypothetical individual

needed three extra unscheduled breaks of 10 to 15 minutes in a regular eight-hour workday, and would miss work four or more times per month due to her disability, then Zaiger could not find competitive work.

Zaiger's attorney also questioned the vocational expert. Zaiger's attorney inquired whether working at a slow pace for up to one-third of the workday would impact Zaiger's ability to maintain employment. The vocational expert opined that such a limitation would preclude Zaiger from competitive employment.

### C. Zaiger's Medical History

On February 13, 2006, Zaiger met with Karen Penick, LISW, to begin receiving services from the Abbe Center for Community Mental Health in Cedar Rapids, Iowa. At the meeting, Zaiger told Penick that she recently lost her job. Penick noted that Zaiger "received verbal and written warnings related to absenteeism as well as being late. She attributes this to her multiple medical problems although there was one incident in which she drank too much the night before and ended up sleeping through her alarm."[4] Penick found that Zaiger had the following symptoms of depression: (1) feelings of guilt, worthlessness, and helplessness; (2) low interest and motivation; (3) irritability and difficulty coping; (4) hypersomnia; (5) frequent suicidal ideation without plan or intent; (6) self-harm behaviors, including cutting and shoplifting; and (7) feelings of anxiety. Upon examination, Penick diagnosed Zaiger with major depressive disorder, dysthymic disorder, and borderline personality disorder. Penick recommended medication and individual and group therapy as treatment.

In a letter dated March 31, 2006, Dr. Thomas R. Sherman, D.C., Zaiger's chiropractor, addressed Zaiger's issues with pain. Specifically, Dr. Sherman reported that Zaiger was treated for moderate low back pain, neck pain with headaches, and mid-thoracic pain. Dr. Sherman provided the following opinions with regard to Zaiger's functional abilities:

---

[4] Administrative Record at 399.

1.     Lifting and Carrying -- I would not restrict her ability to lift or carry due to a spinal condition.
2.     Standing, Walking, Sitting -- Although at times, due to pain Ms. Zaiger may have difficulty performing any of these for a long period, I would not restrict her from any of them due to a spinal condition.
3.     Stooping, Climbing, Kneeling and Crawling -- Again, limited only by patient's discomfort. I would not limit any of these activities due to a spinal condition.
4.     Handling, Seeing, Hearing, Speaking & Traveling -- No restrictions due to spinal condition.
5.     Work Environment Restrictions -- No restrictions due to a spinal condition.

(Administrative Record at 495.)

On April 7, 2006, Dr. Claude H. Koons, M.D., reviewed Zaiger's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Zaiger. Dr. Koons determined that Zaiger could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry 25 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Koons also determined that Zaiger should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Dr. Koons found no postural, manipulative, visual, or communicative limitations. Dr. Koons concluded that:

> The allegations are credible to the extent outlined. Despite a degree of low back pain she has been capable of maintaining her normal daily activities. She is capable of activity as outlined on the RFC.

(Administrative Record at 503.)

On April 17, 2006, Zaiger was referred to Dr. Harlan J. Stientjes, Ph.D., for a psychological evaluation. At the time of the evaluation, Dr. Stientjes noted that Zaiger was terminated from her job in child care services for "missing an extensive amount of

work."[5] Dr. Stientjes further noted that Zaiger was currently working as a full-time nanny for a family with several young children. Upon examination, Dr. Stientjes diagnosed Zaiger with major depressive disorder, anxiety disorder, and borderline personality disorder. Dr. Stientjes concluded that:

> [Zaiger] can understand and remember basic to mildly complex instructions and carry them out from one day to the next. She should be able to complete complex routines, but personality issues, along with health concerns, could interfere with attendance at work. Interactions will be highly self-absorbed and that will limit her understanding of situations from other perspectives. Safety judgment should be adequate and she should be able to respond to changes in the workplace, but will tend to be rigid in her own interpretation of expectations.

(Administrative Record at 509.)

On May 2, 2006, Dr. Carole D. Kazmierski, Ph.D., reviewed Zaiger's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Zaiger. Dr. Kazmierski diagnosed Zaiger with major depressive disorder, dysthymic disorder, anxiety disorder, and borderline personality disorder. Dr. Kazmierski determined that Zaiger had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Kazmierski determined that Zaiger was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Kazmierski concluded that:

> Although [Zaiger's] allegations are credible, her mental impairments are not of listing level severity. [Zaiger's activities of daily living] show little restriction. Cognitive functioning is generally intact, but performance may be

[5] Administrative Record at 507.

> somewhat variable, depending upon [her] mood. Due to
> problems with affect regulation, moderate restrictions on social
> functioning are likely. [Zaiger] can tolerate brief, superficial
> interactions with others when it is in her own interests to do
> so.

(Administrative Record at 526.)

On October 10, 2006, Zaiger was admitted to the University of Iowa Hospitals and
Clinics ("UIHC") for self-harm and suicide precautions. Zaiger was given medication for
treatment. On October 11, 2006, she was transferred to the Psychiatric Floor at UIHC.
Doctors continued to treat Zaiger with medication. She was diagnosed with mood disorder
and borderline personality disorder. On October 13, 2006, Zaiger was discharged from
the hospital in stable condition. Doctors recommended that she continue taking her
medication as treatment. On February 1, 2007, Zaiger was again admitted to the UIHC
for suicide precaution. She was treated with medication. On February 5, 2007, Zaiger
was discharged with no suicidal ideation and improved mood and anxiety.

On September 4, 2007, Zaiger met with Dr. Dallas H. Bryant, Ph.D., for a
psychological evaluation. Upon testing and examination, Dr. Bryant found that
"[a]chievement among basic skills areas is not commensurate with her mental ability level.
Marginal status is present in reading. Achievement in mathematics and written expression
is sufficiently marginal to allow her to be identified as learning disabled."[6] Dr. Bryant
also found that Zaiger identified as "personality disordered." Dr. Bryant also found
depression to be a "major" area of concern. Dr. Bryant concluded that Zaiger would be
most suited for employment that emphasized working with objects rather than people.

On January 9, 2008, Zaiger met with Penick for her annual psychiatric review.
Upon examination, Penick diagnosed Zaiger with depressive disorder and borderline
personality disorder. Penick noted that:

> [Zaiger] continues to make progress with her treatment goals.
> She is developing skills in order to manage and decrease
> intense emotions and to decrease impulsivity and learn to

---

[6] Administrative Record at 908.

> respond to things rationally rather than just reacting to them
> based on her emotions. There has been a decrease in self-
> harm and self-defeating behaviors, although she continues to
> work on this. . . . She has continued to have problems on the
> job and is not able to maintain employment because of
> absenteeism due to illness but also because of relationship
> problems at work. . . . She is making progress with skill
> development and learning to implement skills from the
> STEPPS group on a real-life basis.

(Administrative Record at 703-04.) Penick recommended continued use of medication and both individual and group therapy as treatment. Similarly, in January 2009, Zaiger's annual review included diagnoses of depressive disorder and borderline personality disorder. Penick found that:

> [Zaiger] has made significant progress in terms of identifying
> short and intermediate term goals. She is taking college
> courses and she is working on trying to live independently.
> There has been a decrease in self-defeating and manipulative
> as well as parasuicidal behavior. She has been diligent with
> regard to attending groups and working on applying group
> skills from the STEPPS program to real life situations. . . .
> Overall, coping skills have improved.

(Administrative Record at 761.) Penick recommended that Zaiger continue her medication management and participate in both individual and group therapy as treatment.

On August 6, 2009, Dr. Rene Staudacher, D.O., reviewed Zaiger's medical records and provided DDS with a physical RFC assessment for Zaiger. Dr. Staudacher determined that Zaiger could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staudacher also determined that Zaiger could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Staudacher further found that Zaiger should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Lastly, Dr. Staudacher found no manipulative, visual, or communicative limitations.

On August 18, 2009, Dr. Aaron Quinn, Ph.D., reviewed Zaiger's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Zaiger. Dr. Quinn diagnosed Zaiger with depressive disorder, anxiety disorder, and personality disorder. Dr. Quinn determined that Zaiger had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Quinn determined that Zaiger was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Quinn concluded that:

> [Zaiger] is expected to have work-related difficulties with extended attention, detailed instructions, stress management, interpersonal functioning, and change. [Zaiger] does, though, retain the ability to complete at least simple repetitive tasks on a sustained basis if she is able to work independent of others as needed.

(Administrative Record at 834.)

On November 4, 2009, Penick, Zaiger's treating counselor, filled out a Mental Impairment Questionnaire that was provided to her by Zaiger's attorney. In the questionnaire, Penick described Zaiger's symptoms as depression, self-harm behaviors, intermittent suicidal ideation, difficulty with concentration, and low energy and motivation. Penick opined that Zaiger's prognosis was "fair." Penick found that Zaiger was seriously limited, but not precluded from: responding appropriately to changes in a routine work setting, interacting appropriately with the general public, and maintaining socially appropriate behavior. Penick further found that Zaiger was unable to meet competitive standards in: maintaining regular attendance and being punctual within customary, usually

strict tolerances, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavior extremes, dealing with normal work stress, and dealing with stress of semi-skilled and skilled work. Penick opined that both physical and emotional pain exacerbates Zaiger's psychiatric condition. Penick determined that Zaiger had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Lastly, Penick noted that Zaiger would be absent four or more days per month from work due to her impairments or treatment for her impairments.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Zaiger is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is

determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Zaiger had not engaged in substantial gainful activity since May 5, 2006.[7] At the second step, the ALJ concluded from the medical evidence that Zaiger had the following severe impairments: chronic back pain variously diagnosed to include mechanical low back pain, fibromyalgia, obesity, depression, anxiety, borderline personality disorder, and asthma. At the third step, the ALJ found that Zaiger did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Zaiger's RFC as follows:

---

[7] The parties agreed that Zaiger's alleged disability onset date was February 13, 2006. However, in her decision, the ALJ found that Zaiger "worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity except possibly for periods in 2006 and 2007." Administrative Record at 17. The ALJ concluded that "[b]ecause it cannot be determined if this work rose to the level of substantial gainful activity, the undersigned finds [Zaiger] has not engaged in substantial gainful activity since May 5, 2006[.] . . ." *Id.*

> [Zaiger] has the residual functional capacity to perform light
> work . . . except she can lift and carry 20 pounds occasionally
> and 10 pounds frequently. She can stand/walk for six hours in
> an eight-hour workday and sit for six hours in an eight-hour
> workday. She can occasionally climb, balance, stoop, kneel,
> crouch, and crawl. However, she can never climb ropes,
> ladders, or scaffolds. She can have no more than occasional
> exposure to pulmonary irritants. She should have no more
> than occasional exposure to extremes of temperature and
> humidity. She should have no more than occasional, defined
> as brief superficial, interaction with the public, coworkers, and
> supervisors.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Zaiger

could not perform any of her past relevant work. At the fifth step, the ALJ determined

that based on her age, education, previous work experience, and RFC, Zaiger could work

at jobs that exist in significant numbers in the national economy. Therefore, the ALJ

concluded that Zaiger was not disabled.

### B. Objections Raised By Claimant

Zaiger argues that the ALJ erred in three respects. First, Zaiger argues that the

ALJ failed to properly evaluate the opinions of her treating counselor, Karen Penick, a

licensed independent social worker. Second, Zaiger argues that the ALJ failed to properly

evaluate the opinions of Dr. Quinn, a non-examining state agency doctor. Lastly, Zaiger

argues that the ALJ's RFC assessment is flawed because she failed to fully and fairly

develop the record by not obtaining work-related mental limitations from a treating or

examining medical source.

### 1. Penick's Opinions

Penick, as a licenced independent social worker, is not classified as an "acceptable

medical source" under the Social Security Regulations. Even though Penick is not an

"acceptable medical source," the Social Security Administration ("SSA") requires an ALJ

to consider such opinions in making a final disability determination. On August 9, 2006,

the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to

clarify how the SSA considers opinions from sources not classified as "acceptable medical

sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a licenced independent social worker, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In her decision, the ALJ addressed Penick's opinions as follows:

> The undersigned gives little weight to the opinion of Ms. Penick. Her opinion is not supported by her own treatment notes which generally reflect GAFs in the 55 to 65 range. Her opinion is also not supported by the treatment notes of Dr. Wilharm who sees [Zaiger] periodically for medication management and who has not reported functional limitations.
>
> Ms. Penick's opinion is also inconsistent with the lack of intensive mental health treatment such as intensive outpatient treatment programs, partial hospitalization programs, or hospitalizations save for a brief hospitalization when she was

seen at the emergency department in February 2010 for an alleged overdose. She stated she had taken an extra thyroid medication pill to see what it would be like if she decided to overdose in a suicide attempt. She denied being actually suicidal, although the reporter wrote that 'gaminess has got her through the emergency room and admitted to the Psychiatric Unit. She admits that she is treated for borderline personality disorder. She admits that she is seeking disability though she is only 25. . . . She is savvy to the process and continues to complain of numerous somatic issues and has sought multiple avenues through the University for treatment. . . .'

Ms. Penick's opinion is also inconsistent with [Zaiger's] very full activities including attending community college full-time, providing child care, being involved in many church activities, and being involved in many extracurricular activities. Her opinion is also inconsistent with the opinion of Erika Klasson [sic], a case manager, who in October 2010 wrote [Zaiger] would benefit from continuing school or participating in some sort of work activity to provide structure and help her continue to feel focused and working toward a solid gold [sic] as this seems to be very important to her.

(Administrative Record at 21-22.) Having reviewed the entire record, the Court finds that the ALJ properly considered Penick's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated her reasons for finding Penick's opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Dr. Quinn's Opinions and the ALJ's RFC Assessment*

Zaiger argues that the ALJ failed to properly evaluate the opinions of Dr. Quinn, a non-examining state agency doctor. Specifically, Zaiger maintains that the ALJ failed to include all the limitations imposed by Dr. Quinn in her RFC assessment for Zaiger. As a result of not including all of Dr. Quinn's limitations in her RFC assessment, Zaiger contends that the ALJ's RFC assessment is not supported by substantial evidence in the

medical record as a whole. Zaiger concludes that this matter should be remanded so that the ALJ can more fully and fairly develop the record with regard to her RFC. Zaiger also maintains that this matter should be remanded to require the ALJ to order a consultative examination due to the ALJ's rejection of various opinions from treating and examining sources.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). An ALJ is also required to "'explain in the decision the weight given to the opinions of a State agency medical . . . consultant[.]'" *Wilcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008) (quoting 20 C.F.R. § 404.1527(f)(2)(ii)).

Furthermore, an ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Additionally, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant

evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Finally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id*. For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, the ALJ thoroughly reviewed Zaiger's medical records and fully considered the opinions of treating and consultative sources.[8] Specifically, the ALJ addressed Dr. Quinn's opinions and determined that his opinion was based on a "thorough and thoughtful review and assessment of the written evidence of record, is consistent with the treatment notes of [Zaiger's] mental health professionals, and is consistent with [her] very full activities."[9] While the ALJ may not have incorporated all of the limitations opined by Dr. Quinn, the Court nevertheless finds that the ALJ properly considered Dr. Quinn's opinions and addressed them in her decision. *See Wilcockson*, 540 F.3d at 880.

---

[8] *See* Administrative Record at 18-22.

[9] *Id*. at 22.

Moreover, having reviewed the entire record, the Court finds that the ALJ properly considered Zaiger's medical records, observations of treating physicians, and Zaiger's own description of her limitations in making the RFC assessment for Zaiger.[10] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

The Court also finds that the medical evidence relied on by the ALJ was adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Accordingly, the Court determines that remand is unnecessary for a consultative examination. *See Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled). Accordingly, the Court determines that the ALJ fully and fairly developed the record as to the medical evidence in this case. *See Cox*, 495 F.3d at 618.

## VI. CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinion evidence provided by Zaiger's treating licensed independent social worker, Penick; and non-examining state agency source, Dr. Quinn. The Court also finds that the ALJ fully and fairly developed the record with regard to the medical evidence in the case, and made a proper RFC assessment for Zaiger. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.      The final decision of the Commissioner of Social Security is **AFFIRMED**;

---

[10] *See id.* at 18-22.

2.    Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this  30ᵗʰ  day of _____August_____, 2012.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA